1

2

3

4            UNITED STATES DISTRICT COURT

5           NORTHERN DISTRICT OF CALIFORNIA

6

7   CARLOS A. HAWTHORNE,                    Case No. 17-cv-04960-HSG

8                  Plaintiff,              **ORDER DENYING DEFENDANT**
                                           **SWENSEN'S MOTION TO DISMISS;**
9          v.                              **GRANTING MOTION FOR**
                                           **SUMMARY JUDGMENT; SETTING**
10   A YANEZ, et al.,                      **BRIEFING SCHEDULE**

11                 Defendants.              Re: Dkt. Nos. 66, 67

12

13         Plaintiff, an inmate at San Quentin State Prison ("SQSP"), has filed this *pro se* action

14   pursuant to 42 U.S.C. § 1983.  Now pending before the Court are: (1) defendant Swensen's

15   motion to dismiss, Dkt. No. 66, and (2) defendants Czajkowski, Davis, Fonesca, Hagen, Thomas,

16   and Yanez ("CDCR Defendants")'s motion for summary judgment, Dkt. No. 67.  Plaintiff has not

17   filed an opposition to defendant Swensen's motion to dismiss, and defendant Swensen has not

18   filed a reply in support of her motion.  Plaintiff has filed an opposition to the CDCR Defendants'

19   summary judgment motion, Dkt. No. 75, and the CDCR Defendants have filed a reply, Dkt. No.

20   76.  For the reasons set forth below, the Court DENIES defendant Swensen's motion to dismiss,

21   Dkt. No. 66; and GRANTS the CDCR Defendants' motion for summary judgment, Dkt. No. 67.

22   **I.       Procedural Background**

23         The Court found that the amended complaint stated the following cognizable claims:

24         • Defendants Fonesca and Yanez discovered and read Plaintiff's draft federal civil
             rights complaint and, in retaliation for the protected conduct, confiscated the
25           complaint and reported it to Plaintiff's mental health team, in violation of the First
             Amendment;
26
           • Defendants Czajkowski, Davis, Deal,[1] Hagens, Swensen, and Thomas directed
27

28   _____

     [1] On October 5, 2021, the Court dismissed defendant Deal from this action pursuant to the parties'
     joint stipulation.  Dkt. No. 63.

custodial staff to confiscate Plaintiff's property, including his legal documents and the draft complaint, in retaliation for Plaintiff's protected conduct, in violation of Plaintiff's First Amendment right to access the courts and right to engage in protected conduct without suffering retaliation;

- Defendants Czajkowski, Davis, Deal, Hagens, Swensen, and Thomas confiscated Plaintiff's religious books and items, in violation of his First Amendment right to free exercise of religion;

- Defendants Czajkowski, Davis, Deal, Hagens, Swensen, and Thomas confiscated Plaintiff's books and magazines, in violation of his First Amendment right to free exercise of speech;

- Defendant Czajkowski squeezed Plaintiff's handcuffs too tightly; grabbed Plaintiff roughly by the neck; shoved Plaintiff's head into the wall; and choked Plaintiff, in violation of the Eighth Amendment's prohibition on excessive use of force; and

- Defendant Czajkowski threatened to beat Plaintiff if he cried out for help, in violation of his First Amendment right to freedom of speech.

## II.     Defendant Swensen's Motion to Dismiss

### A.     Amended Complaint

The amended complaint makes the following allegations regarding defendant Swensen.

Plaintiff is enrolled in the SQSP Psychiatric Inpatient Program ("PIP").  In order to shield himself from complete view when he was bathing or using the toilet, Plaintiff would use discarded paper bags to cover ten percent of the windows.  Dkt. No. 21 ("FAC") at 1 and 7.  The PIP has a policy prohibiting inmate-patients who are on suicide watch from covering their cell windows. But, during the relevant time period, Plaintiff was not on suicide watch and never fully covered the windows.  *Id.*  Because Plaintiff had filed a grievance alleging that mental health services personnel and other prison officials had discriminated against him, mental health services placed Plaintiff on suicide watch.  FAC at 1.  Plaintiff was unsuccessful in obtaining relief regarding the discriminatory treatment via the administrative grievance process, so he drafted a federal civil rights complaint regarding these issues.  FAC at 1–2.

On or about August 26, 2016, during the course of a cell search, defendants Fonesca and Yanez discovered the draft complaint.  FAC at 4.  Defendants Fonesca and Yanez confiscated Plaintiff's drafted federal civil rights complaint, his attorney-client communications, and his other legal documents.  FAC at 4.

On or about September 9, 2016, defendant Swensen, along with defendants Hagen,

United States District Court
Northern District of California

1   Thomas, Deal, Czajkowski, and Davis summoned Plaintiff to a medical treatment planning

2   conference, known as a MEGA session.  Based on Defendant Bensimon's false report that

3   Plaintiff was fully covering his windows, also referred to as "boarding up," defendant Thomas

4   recommended that Plaintiff be placed on property control, a disciplinary measure that involves

5   confiscating all of an inmate's property, including hygiene products, reading materials, and legal

6   materials.  The MEGA session team members implemented the recommendation.  FAC at 5–6.

7       Plaintiff's property, specifically his legal documents, draft complaint, religious books and

8   items, and books and magazines, was confiscated per the property control measure which

9   defendant Swensen (and others) authorized.  The confiscation of the legal documents and draft

10  complaint was in retaliation for Plaintiff's protected conduct, in violation of the First Amendment.

11  The confiscation of his religious books and items violated Plaintiff's First Amendment right to

12  free exercise of religion.  The confiscation of his books and magazines violated Plaintiff's First

13  Amendment right to free exercise of speech.

14      **B.      Legal Standard**

15      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's

16  complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Under the "notice pleading"

17  standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a short and

18  plain statement of the plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); *see*

19  *also Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

20      "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal

21  theory or (2) insufficient facts under a cognizable legal claim."  *SmileCare Dental Grp. v. Delta*

22  *Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).  However, a complaint

23  will survive a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a

24  claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim

25  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

26  reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*

27      In making this determination, a court reviews the contents of the complaint, accepting all

28  factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party.

United States District Court
Northern District of California

*See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint, *Paulsen*, 559 F.3d at 1071, and need not accept as true legal conclusions cast in the form of factual allegations, *see Iqbal*, 556 U.S. at 678. It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) (quotations and citation omitted).

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

### C.    Request for Judicial Notice

Defendant Swensen requests that the Court take judicial notice of the following: (1) ECF No. 1 in this action; (2) ECF No. 1 at 5-6, State of California, Department Corrections and Rehabilitation, Interdisciplinary Progress Notes, dated September 8, 2016, attached as Exhibit C to original complaint (Dkt. No. 1), filed August 25, 2017, in this action; and (3) State of California, Department Corrections and Rehabilitation, Interdisciplinary Progress Notes, dated September 9, 2016, attached as Exhibit B to Declaration of Mary B. Pendleton in Support of Defendant Sarah Swensen's Motion to Dismiss. Plaintiff argues that the Court may take judicial notice of these documents pursuant to Fed. R. Evid. 201(b)(2) and Fed. R. Evid. 801(d)(2), but does not say which rule of evidence applies to which document or why the rule is applicable. Dkt. No. 66-4.

The Court GRANTS IN PART AND DENIES IN PART the request for judicial notice. Fed. R. Evid. 201(b) provides that a court may judicially notice a fact that is not subject to

reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Fed. R. Evid. 801(d)(2) has been used to allow judicial notice of documents where the contents are challenged as hearsay, but the underlying document is a document whose accuracy can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Generally speaking, a court only takes judicial notice of the fact that documents were filed in a court proceeding, but does not make any determinations regarding the accuracy of the contents of the documents, including the alleged authorship of the document.  *See, e.g., In re Bare Escentuals, Inc. Sec. Lit.*, 745 F.Supp.2d 1052, 1067 (N.D. Cal. 2010) (in considering defendant's motion to dismiss, the court took notice of the existence of unrelated court documents, but did not take judicial notice of the documents for the truth of the matter asserted in them).

The Court GRANTS the request for judicial notice with respect to document No. 1 and takes judicial notice of the existence of this court document.  The Court does not take judicial notice of the truth of the matters asserted in the original complaint or the attached exhibits.  The Court DENIES the request for judicial notice with respect to document Nos. 2 and 3 because it appears that defendant Swensen is requesting that the Court take judicial notice of the truth of the matters asserted in these progress notes.  The accuracy of the contents of the progress notes, specifically the purpose of the property confiscation, cannot be accurately and readily determined at this stage in the litigation.

### D.      Analysis

Defendant Swensen argues that the amended complaint should be dismissed because (1) the claims against her are untimely; (2) Plaintiff has not adequately alleged that she was personally involved in the deprivation of his constitutional rights; (3) she is entitled to qualified immunity; and (4) any property confiscation was reasonably related to a legitimate penological interest.

#### 1.      Timeliness

Defendant Swensen argues that Plaintiff's claims against her are untimely because they

were not brought within the applicable one-year statutory period.  She argues that because she is a healthcare provider, Plaintiff was required to file suit against her within the one year statute of limitations set forth in Cal. Code Civ. Proc. § 340.5.  Defendant Swensen argues that Plaintiff was aware of his injury – the property confiscation – by September 7, 2016, but did not name her in this action until April 4, 2018, when he named her in the amended complaint.  But the Court finds that Section 340.5 does not supply the relevant statute of limitations.

Section 1983 does not contain its own limitations period.  "Without a federal limitations period, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state."  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (citing *Wilson v. Garcia*, 471 U.S. 261, 276–79 (1985), *superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–78 (2004)); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Section 1983 actions are characterized as personal injury actions for statute of limitations purposes.  *Flynt v. Shimazu*, 940 F.3d 457, 461 (9th Cir. 2019).  In California, the applicable statute is Cal. Civ. Proc. Code § 335.1.  Cal. Civ. Proc. Code § 335.1 provides that the general residual statute of limitations for personal injury actions is two years. *See* Cal. Civ. Proc. Code § 335.1 (current codification of residual limitations period, which is now two years; enacted in 2002).  The applicable statute of limitations for Section 1983 actions brought in California is therefore two years.  A federal court must also give effect to a state's tolling provisions when applicable.  *See Hardin v. Straub*, 490 U.S. 536, 538, 544 (1989).  In relevant part, California law tolls the limitations period for two years for the disability of imprisonment. Cal. Civ. Proc. Code § 352.1(a).  Accordingly, an inmate bringing a Section 1983 action has, generally speaking, four years from the date the claim accrued to file a Section 1983 action raising that claim.

Cal. Civ. Proc. § 340.5 is inapplicable here because it applies to actions "for injury or death against a health care provider based upon such person's alleged professional negligence." Cal. Civ. Proc. § 340.5 ("In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of

United States District Court
Northern District of California

1  reasonable diligence should have discovered, the injury, whichever occurs first."). The amended

2  complaint does not allege that Plaintiff suffered injury because of defendant Swensen's alleged

3  professional negligence; nor does it allege that defendant Swensen was professionally negligent.

4  The amended complaint alleges that defendant Swensen authorized the confiscation of Plaintiff's

5  property in retaliation for Plaintiff's protected conduct; and that the confiscation violated

6  prevented Plaintiff from practicing his religion and engaging in free speech.

7      Assuming arguendo that Plaintiff was aware of his claims against defendant Swensen by

8  September 9, 2016, the limitations period for bringing a Section 1983 action against defendant

9  Swensen for the property confiscation expired on September 9, 2020.  This action was filed on

10  August 25, 2017, and the amended complaint was filed on April 4, 2018.  Plaintiff's claims

11  against defendant Swensen are timely.

12                  **2.      Lack of Personal Involvement**

13      Defendant Swensen alleges that the Court should dismiss the claims against her because

14  Plaintiff has not adequately alleged what acts were taken by her, or how she was personally

15  involved in the deprivation of his constitutional rights.  She argues that the amended complaint's

16  allegation that she "decided in unison" to have custodial officers confiscate Plaintiff's property is

17  "vague and fails to allege what act, if any, [she] personally performed on September 9, 2016, that

18  violated Plaintiff's constitutional rights."  Dkt. No. 66-1 at 11.  In addition, Defendant Swensen

19  argues that Plaintiff's deposition testimony contradicts the amended complaint's allegations

20  because, in his deposition, Plaintiff admitted that he did not know if defendant Swensen directed

21  or supervised anyone who removed the property from his cell and admitted that the property was

22  confiscated prior to the September 9, 2016 meeting.

23      Defendant Swensen's arguments are not well-taken on a motion to dismiss.  In considering

24  the motion to dismiss, the Court must determine whether, accepting all factual allegations in the

25  amended complaint as true and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has

26  pled factual content that allows the Court to draw the reasonable inference that defendant Swensen

27  has engaged in First Amendment retaliation and violated Plaintiff's First Amendment rights to free

28  speech and free exercise of religion.  The Court may only consider the allegations in the amended

United States District Court
Northern District of California

1  complaint in considering the motion to dismiss. *Outdoor Media Group, Inc.*, 506 F.3d at 899.

2  The Court cannot and does not consider Plaintiff's deposition testimony on a motion to dismiss

3  because the content of a deposition is not a clearly established "fact" of which a court can

4  judicially take notice. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 n.1 (9th Cir. 2010) (citing

5  *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007)).

6      In relevant part, the amended complaint alleges the following: Plaintiff drafted a civil

7  rights complaint alleging that mental health services staff had discriminated against him; this draft

8  complaint was found and read during a cell search; correctional officers informed mental health

9  services about this draft complaint; two weeks later, Plaintiff was summoned to a mental health

10  services hearing (MEGA session) with defendant Swensen and other mental health services staff

11  and informed that all his property would be confiscated and unavailable to him; the property

12  confiscated included religious materials necessary to practice his religion and included all his

13  books and magazines; and the MEGA session team, which included defendant Swensen, decided

14  on this punitive measure even though Plaintiff had done nothing to warrant the

15  confiscation/restriction. Accepting these factual allegations as true and drawing all reasonable

16  inferences in favor of Plaintiff, Plaintiff has sufficiently alleged defendant Swensen personally

17  participated in the constitutional violations. Defendant Swensen was allegedly notified of the

18  draft complaint against mental services health staff, which included her, and two weeks later

19  defendant Swensen was part of the mental health services team that authorized an unwarranted

20  property confiscation that deprived Plaintiff of his legal materials, his religious materials, and his

21  books and magazines.

22          **3.    Qualified Immunity**

23      Defendant Swensen argues that she is entitled to qualified immunity because Plaintiff has

24  failed to plead any facts that establish either the existence of a constitutional violation or her

25  involvement in the alleged constitutional violations. As discussed *supra*, the complaint has

26  adequately pled defendant Swensen's involvement in the alleged constitutional violations.

27          **4.    First Amendment Claim**

28      Defendant Swensen argues that Plaintiff's First Amendment claims fail on the merits

because the property confiscation was reasonably related to the legitimate penological interest of ensuring the safety of employees, medical professionals, and inmates.  Specifically, she argues that the progress notes indicate that Plaintiff's property was confiscated because he was using it to cover his windows which eliminated nursing sightlines, therefore impacting the ability to provide him with medical care and which violated the fire safety hazard policy.  On a motion to dismiss, the Court cannot assume the truth of the statements made in the progress notes.  This would require the Court to make a credibility determination or to otherwise look to the merits of this claim.  The amended complaint adequately alleges that the property confiscation was unjustified and retaliatory.  Plaintiff alleges that he was not boarding up or violating PIP policy, and that the property confiscation happened shortly after correctional officials discovered his draft complaint that sought to bring suit against the mental health services staff.

### E.    Setting Briefing Schedule

For the foregoing reasons, the Court DENIES defendant Swensen's motion to dismiss. Within sixty (60) days of the date of this order, defendant Swensen shall file a motion for summary judgment.  Plaintiff's opposition shall be filed within twenty-eight (28) days of the date that defendant Swensen's dispositive motion is filed.  Defendant Swensen shall file her reply within fourteen (14) days of the date the opposition is filed.  The motion will be deemed submitted as of the date the reply is filed.  No hearing shall be held on this motion.

## III.    CDCR Defendants' Motion for Summary Judgment

The CDCR Defendants argue that Plaintiff has failed to exhaust his administrative remedies with respect to his claims against defendants Fonseca, Davis, Hagens, and Czajkowski, and with respect to his free exercise of religion and free speech claims against defendant Thomas, such that they are entitled to summary judgment on these claims.  Dkt. No. 67.

In response, Plaintiff argues that "there is no escape from the conclusion that the complaint states a cause of action," and proceeds to discuss the elements of a conspiracy claim.  Plaintiff appears to be alleging that all defendants were engaged in a civil conspiracy.  Plaintiff also attaches to the opposition an informational chrono dated December 22, 2021 regarding opened legal mail.  Plaintiff does not address the exhaustion issue.  Dkt. No. 75.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  In reply, the CDCR Defendants argue correctly that the civil conspiracy claim was

2  screened and dismissed by the Court.[2]  In addition, the CDCR Defendants argue that Plaintiff has

3  failed to provide any evidence that challenge the facts presented in the summary judgment motion.

4  Dkt. No. 76.

5  **A.      Factual Background**

6  **i.      CDCR Administrative Remedies**

7  During the relevant time period, the California Department of Corrections and

8  Rehabilitation ("CDCR") provided inmates with the following administrative remedies, also

9  referred to as the administrative grievance process.[3]  The CDCR provided its inmates the right to

10  appeal administratively "any policy, decision, action, condition or omission by the department or

11  its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or

12  her health, safety or welfare."  15 Cal. Code Regs. § 3084.1(a).  Grievance issues are separated

13  into two categories: custody issues and healthcare issues.

14  To grieve a custody issue, a prisoner was required to submit his complaint on a CDCR

15  Form 602 and describe the specific issue being grieved and the relief requested.  15 Cal. Code

16  Regs. § 3084.2(a).  The prisoner was required to state all facts known and available to him

17  regarding the issue being appealed at the time of submission; and list all staff members involved

18  and describe their involvement in the issue.  15 Cal. Code Regs. § 3084.2(a)(1), (4).  To exhaust

19  available administrative remedies for custody grievances, a prisoner was required to have his

20  grievance proceed through three levels of review: (1) first formal level filed with one of the

21  institution's appeal coordinators, (2) second formal level filed with the institution head or

22  designee, and (3) third formal level filed with the CDCR director or designee.  15 Cal. Code Regs.

23

24  [2] In screening the amended complaint, the Court dismissed the conspiracy claim with prejudice
because Plaintiff brought a conspiracy claim pursuant to 18 U.S.C. §§ 241, 242, but there is no
private right of action under these statutes.  Dkt. No. 30 at 4.

25  [3] The regulations that set out the features of the administrative grievance process for custody

26  grievances for California prisoners underwent a substantial restructuring in 2020.  On March 25,
2020, and effective June 1, 2020, 15 Cal. Code Regs. §§ 3084-3084.9 were repealed and replaced

27  with renumbered and amended provisions at sections 3480 through 3487.  Because the alleged
incidents took place prior to June 1, 2020, the current administrative grievance process does not

28  apply to Plaintiff's claims.  All the citations in this order to the California regulations are to the
regulations in place during the relevant period, rather than to the current regulations.

§ 3084.7.  Pursuing a grievance through the third and final level satisfied the exhaustion requirement set forth in 42 U.S.C. § 1997e(a).  15 Cal. Code Regs. § 3084.1(b).

To grieve a healthcare issue, a prisoner must submit a CDCR Form 602 HC and "explain the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon [his] health and welfare for which [he sought] administrative remedy."  15 Cal. Code Regs. §§ 3999.226, 3999.277(a).  The prisoner was required to state all facts known and available to him regarding the healthcare issue being grieved at the time of submission; and required to identify all staff member(s) involved. 15 Cal. Code Regs. § 3999.226(g).  Healthcare grievances are subject to two levels of review: an institutional level of review and a headquarters level of review.  15 Cal. Code Regs. § 3999.226(a)(1).  A headquarters level review exhausts the prisoner's administrative remedies for the healthcare grievance.  15 Cal. Code Regs. §§ 3087.5(h), 3999.230 (2019).

### ii.   Plaintiff's Grievances

The relevant time period is from August 26, 2016, when defendants Fonesca and Yanez discovered the draft civil rights complaint, to August 25, 2017, when Plaintiff filed this action.

### 1)   Custody Grievances

During the relevant time period, Plaintiff filed twenty custody (non-healthcare) grievances.[4]  Dkt. No. 67-1 ("Bell Decl.") ¶¶ 7-8 and Ex. A at 19-21 (Dkt. No. 67-1 at 3-4; Dkt. No. 67-2 at 20-22).[5]  Of these twenty grievances, only six of them were exhausted, i.e., timely appealed to the third and final level of review.  Those six custody grievances are described below.

---

[4] The CDCR Defendants only identify seventeen grievances filed during the relevant time period. But it appears from the record that Grievance Nos. SQ-H-16-01876, SQ-H-16-02042, and Grievance No. SQ-17-01500 may have been filed within the relevant time period.  The Inmate/Parolee Appeals Tracking System ("IPATS") reports Grievance Nos. SQ-H-16-01876 and SQ-H-16-02042 as being received by prison officials on September 16, 2016, and reports Grievance No. SQ-17-01500 as being received on August 3, 2017.  The IPATS does not indicate the date that Plaintiff submitted these grievances, but it is possible that these grievances were filed within the relevant time period.

[5] Of these twenty grievances, fifteen have been filed in the record.  Grievance Nos. SQ-C-17-00715, SQ-D-17-01101, SQ-H-16-01876, SQ-H-16-02042, and SQ-17-01500 are not in the record.  The CDCR Defendants report that they cannot locate Grievance Nos. SQ-C-17-00715 and SQ-D-17-01101.  The CDCR Defendants did not identify Grievance Nos. SQ-H-16-01876, SQ-H-16-02042, and Grievance No. SQ-17-01500 as filed within the relevant time period, so did not include copies of these grievances.

United States District Court
Northern District of California

United States District Court
Northern District of California

1.      Grievance No. SQ-I-16-02339 (complaint regarding staff) alleged that Plaintiff tried to commit suicide because defendant Yanez conducted a strip search of him, stared at his genitals during the search, and had the nerve to laugh and say "thank you." Plaintiff requested that SQSP administrative address this matter per institutional and departmental policy. Dkt. No. 67-6 at 17-74.

2.      Grievance No. SQ-J-16-02691 (complaint regarding property) alleged that, sometime prior to October 11, 2016, on behalf of Plaintiff's treatment team, defendant Thomas had defendant Yanez confiscate two boxes of Plaintiff's legal property, including "'loose papers' [which] consisted of civil documents related (to S.Q.H.C. No. #16040661), pursuant to 42 U.S.C. § 1983;" that correctional officer Edwards incorrectly claimed that the loose papers were not in the boxes; and that custody staff had stolen these loose papers. Plaintiff requested that all the loose papers be returned to him; that an action notice be issued to officers Yanez, Edwards, Gomez, Pitts, and Walls because they were part of the chain of custody; and that the papers be returned to him. Dkt. No. 67-6 at 75-95.

3.      Grievance No. SQ-C-17-00584 (complaint regarding legal issues) alleged that Grievance No. SQ-16-1630[6] was erroneously cancelled for failure to appeal within the specified time period. Plaintiff alleges that he was unable to timely appeal because, during the specified time period, he was on suicide watch and therefore unable to access his property. Plaintiff requested that he be allowed to resubmit cancelled Grievance No. SQ-16-1630, and allowed to exhaust administrative remedies with respect to the claims in that grievance. Dkt. No. 67-6 at 96-149.

4.      Grievance No. SQ-C-000647 (complaint regarding visiting procedures) challenged having to pass through x-ray machine after visiting with his attorney and requested unclothed body searches to avoid exposure to radiation. Dkt. No. 67-6 at 150-167.

5.      Grievance No. SQ-C-17-00862 (complaint regarding staff) alleged that he would

---

[6] Grievance No. SQ-16-1630 alleges that on June 20, 2016, officer Castro held him while officer McElroy took away his word search book, causing him to feel unsafe and violating his constitutional rights. Dkt. No. 67-6 at 116-18.

commit suicide because he was tired of defendant Yanez retaliating against him for filing Grievance No. SQ-16-2339 against defendant Yanez.  Plaintiff alleged that, in October 2016, defendant Yanez harassed him by confiscating his allowable personal and state property items without informing him what was done with the confiscated items and without allowing him to dispose of the items.  Plaintiff requested that SQSP administration take action against defendant Yanez for harassing him and failing to keep him safe.  Dkt. No. 67-6 at 168-181.

6.      Grievance No. SQ-D-17-1079 (complaint regarding property) alleged that, on March 3, 2017, officer Vasquez and defendant Yanez unlawfully confiscated Plaintiff's canteen/personal food items after he refused three state-issued meals.  Plaintiff requested that defendants Yanez and Vasquez either return his food items or compensate him for these items. Dkt. No. 67-6 at 182-196.

### 2)      Healthcare Grievances

During the relevant time period, Plaintiff exhausted eight healthcare grievances, i.e., timely appealed these grievances to the final level of review.  The eight healthcare grievances are described below.

1.      Grievance No. SQ-SC-16000358 alleged that PT Jacobo fell asleep when he was on 1:1 watch and suggested that SQSP administration take appropriate action.  Dkt. No. 67-4 at 49-57.

2.      Grievance No. SQ-SC-16000360 alleged that, on September 21, 2016, Mark Spector sexually harassed Plaintiff by unbuttoning his shirt and describing what he was wearing underneath.  Plaintiff requested that the mental health team take action.  Dkt. No. 67-4 at 58-69.

3.      Grievance No. SQ-HC-16041292 alleged that inmate Michael Cook harassed Plaintiff by yelling that he was a sellout and a Jewish piece of shit; and requested that action be taken against Cook or Plaintiff would assume that Cook was hired to harass him and Plaintiff would commit suicide.  Dkt. No. 67-4 at 69-81.

4.      Grievance No. SQ-HC-16041296 alleged that, on August 25, 2016, Plaintiff tried to commit suicide because he was being mistreated by correctional officers Bellotti, Seaman and S.W. C. Hedemark; that his treatment goals were not being acknowledged by his treatment team

13

and his patient rights were not being respected; and that he would try to commit suicide again because his property was unlawfully taken. Plaintiff expressed concern for his psychological well-being and alleged that officer Bellotti was bullying and aggravating him during sessions. Dkt. No. 67-4 at 82-95.

5.      Grievance No. SQ-SC-1700377 alleged that, on February 19, 2017, mental health services staff member Spector sexually harassed Plaintiff by talking to and staring at Plaintiff while Plaintiff was urinating. Plaintiff requested that the Chief of Mental Health address the sexual harassment or Plaintiff would commit suicide. Dkt. No. 67-4 at 112-25.

6.      Grievance No. SQ-HC-1704173 alleged that, on March 16, 2017, Plaintiff discovered that psychiatrists Hedemark and Seaman had forced him to take Celexa. Plaintiff requested that Hedemark and Seaman be removed from his treatment team because he did not feel safe with them. Plaintiff also requested a gaming console, alleging that it was necessary for his mental health. Dkt. No. 67-4 at 127-67.

7.      Grievance No. SQ-HC-17041757 alleged that, on April 11, 2017, Plaintiff felt suicidal because he was under stress, and when he told prison medical staff Bensimmon, she said she would be back but never returned. Plaintiff also alleged that the refusal to provide him with a musical keyboard, electronic tablet, and/or gaming console violated his First Amendment right to "read what he will and when he will." He requested that his treatment team prepare a treatment plan that would afford him cognitive stimulation and help him develop positive coping mechanisms; and requested a fully functional gaming console. Dkt. No. 67-4 at 168-198.

8.      Grievance No. SQ HC 17041759, alleged that he suffered from severe pain in right shoulder, requested that Sgt. Ballien and his subordinates refrain from using mechanical restraints on him; and requested a chrono for waist restraints and that SQ administration and medical take action against Ballien for failing to keep him safe and causing him pain. Dkt. No. 67-4 at 199-224.

**B.      Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

United States District Court
Northern District of California

law." *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor.  *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020).  If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact.  *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence.  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

C.    **Exhaustion Standard**

The Prison Litigation Reform Act sets forth the following exhaustion requirement: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

United States District Court
Northern District of California

1    administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The PLRA's

2    exhaustion requirement is mandatory.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The

3    administrative remedies need not be plain, speedy, and effective; need not satisfy minimum

4    federal standards; and need not be capable of providing the form of relief sought.  *Ross v. Blake*,

5    136 S. Ct. 1850, 1858, (2016) (citing to *Porter v. Nussle*, 534 U.S. 516, 524 (2002) and *Booth v.*

6    *Churner*, 532 U.S. 731, 741 (2001)).

7            The PLRA requires "proper exhaustion" of available administrative remedies.  *Woodford*

8    *v. Ngo*, 548 U.S. 81, 93 (2006).  Proper exhaustion requires using all steps of an administrative

9    process and "demands compliance with an agency's deadlines and other critical procedural rules

10   because no adjudicative system can function effectively without imposing some orderly structure

11   on the course of its proceedings."  *Id.* at 90–91.  Compliance with prison grievance procedures is

12   all that is required by the PLRA to "properly exhaust."  *Jones*, 549 U.S. at 217–18.  The level of

13   detail necessary in a grievance to comply with the grievance procedures will vary from system to

14   system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the

15   boundaries of proper exhaustion.  *Id.* at 218.

16           Where a prison's grievance procedures do not specify the requisite level of factual

17   specificity required in the grievance, a grievance suffices if it alerts the prison to the nature of the

18   wrong for which redress is sought.  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  The

19   grievance should include sufficient information "to allow prison officials to take appropriate

20   responsive measures."  *Id.* (citation and internal quotation omitted) (no exhaustion where

21   grievance complaining of upper bunk assignment failed to allege, as complaint had, that nurse had

22   ordered lower bunk but officials disregarded that order).  The grievance need not include legal

23   terminology or legal theories, because the primary purpose of a grievance is to alert the prison to a

24   problem and facilitate its resolution, not to lay the groundwork for litigation or provide personal

25   notice to a particular official that he may be sued.  *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir.

26   2016).  If an inmate's grievance does not comply with a procedural rule but prison officials decide

27   it on the merits anyway at all available levels of administrative review, it is exhausted.  *Id.* at 656,

28   658 (although plaintiff's grievance did not name prison doctors sued in federal action contrary to

16

United States District Court
Northern District of California

1   rule requiring inmates to name all staff members involved, grievance exhausted administrative

2   remedies because grievance plainly put prison officials on notice of nature of wrong alleged in

3   federal action – denial of pain medication by defendant doctors – and prison officials easily

4   identified named prison doctors involved).

5          Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead

6   and prove. *Jones*, 549 U.S. at 204, 216.  The defendant's burden is to prove that there was an

7   available administrative remedy and that the prisoner did not exhaust that available administrative

8   remedy. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014).  Once the defendant has carried that

9   burden, the burden shifts to the prisoner to come forward with evidence showing that there is

10  something in his particular case that made the existing and generally available administrative

11  remedies effectively unavailable to him. *Id.* at 1172.  A prisoner must provide evidence, not just

12  make conclusory allegations, to meet his burden to show that existing and generally available

13  administrative remedies were effectively unavailable. *See Draper v. Rosario*, 836 F.3d 1072,

14  1079-80 (9th Cir. 2016).  But as required by *Jones*, the ultimate burden of proof remains with the

15  defendant. *Albino*, 747 F.3d at 1172.

16          **D.     Analysis**

17          The CDCR Defendants have shown that the CDCR's administrative remedies were

18  available to Plaintiff.  The record indicates that he frequently filed grievances during the relevant

19  time period. *See* Dkt. No. 67-2 at 20-22; Dkt. No. 67-4 at 11-16; Dkt. No. 67-6 at 7.  The CDCR

20  Defendants have also shown that Plaintiff did not exhaust the available administrative remedies

21  with respect to (1) the First Amendment retaliation claim against defendant Fonesca arising out of

22  the property confiscation; (2) the First Amendment right to access the court / retaliation claim

23  against defendants Czajkowski, Davis and Hagens arising out of the property confiscation; (3) the

24  First Amendment free exercise of religion and free speech claims against defendants Thomas,

25  Czajkowski, Davis, and Hagen arising out of the property confiscation; and (4) the Eighth

26  Amendment excessive force claim and First Amendment free speech claim against defendant

27  Czajkowski arising out of the alleged use of force following the September 2016 treatment team

28  meeting.

United States District Court
Northern District of California

1        None of the grievances name defendants Fonesca, Davis, Hagens, or Czajkowski.  None of

2  the grievances specifically reference the August 26, 2016 cell search (during which the draft

3  complaint was allegedly seized), or the September 9, 2016 treatment team meeting (during which

4  the property confiscation was authorized and immediately after which defendant Czajkowski

5  allegedly choked Plaintiff in violation of the First and Eight Amendments).  Viewed in the light

6  most favorable to Plaintiff, Grievance No. SQ-J-16-02691 possibly raises the access to courts /

7  retaliation claim in this action against defendants Yanez and Thomas because it references a

8  confiscation of legal materials sometime prior to October 11, 2016, by defendant Yanez and under

9  the direction of defendant Thomas.  But Grievance No. SQ-J-16-02691 did not put prison officials

10  on notice of claims against defendants Fonesca, Davis, Hagens, and Czajkowski because it did not

11  reference these defendants; focused primarily on the failure to return certain loose legal papers;

12  and identified *other* correctional officers (Thomas, Yanez, Edwards, Gomez, Pitts, and Walls) as

13  responsible for the alleged wrongdoing.  Grievance No. SQ-J-16-02691 also did not put prison

14  officials on notice of the free exercise of religion and free speech claims against defendant

15  Thomas because it only grieves the confiscation of legal materials; and it does not inform prison

16  officials that Plaintiff's religious materials and books were confiscated and that the confiscation

17  prevented Plaintiff from practicing his religion and exercising his First Amendment right to free

18  speech.  Finally, none of the grievances grieve the alleged use of force and threat by defendant

19  Czajkowski raised in this action.

20        The CDCR grievance procedure in effect at the time required that the prisoner identify the

21  staff members involved in the issue being grieved and describe the staff member's involvement in

22  the issue.  15 Cal. Code Regs. § 3084.2(a)(1), (4) (2018).  None of the grievances have identified

23  Fonesca, Davis, Hagens, or Czajkowski as violating Plaintiff's constitutional rights.  The only

24  grievance possibly raising the claims in this action, Grievance No. SQ-J-16-02691, did not put

25  prison officials on notice of any claims against defendants Fonesca, Davis, Hagens, or

26  Czajkowski, or on notice of First Amendment free exercise and free speech claims against

27  defendant Thomas.  Viewing the record in the light most favorable to Plaintiff, the Court finds that

28  none of the grievances filed in the relevant time period exhausted the claims against defendants

Fonesca, Davis, Hagens, and Czajkowski, or exhausted the First Amendment free exercise and free speech claims against defendant Thomas.

Because the CDCR Defendants have met their burden of proving that there was an available administrative remedy and that Plaintiff did not exhaust that available administrative remedy, the burden shifts to Plaintiff to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. Plaintiff has not alleged, much less provided evidence, that administrative remedies were unavailable to him. Moreover, his frequent grievance activity during the relevant time period indicates that administrative remedies were available to him. The Court finds that there is no triable issue of fact as to whether Plaintiff exhausted his claims against defendants Fonesca, Davis, Hagens, and Czajkowski, or whether Plaintiff exhausted the First Amendment free exercise and free speech claims against defendant Thomas. The Court GRANTS summary judgment in favor of defendants Fonesca, Davis, Hagens, and Czajkowski on all claims, and in favor of defendant Thomas on the First Amendment free exercise and free speech claims.

## CONCLUSION

For the reasons set forth above, the Court orders as follows.

i.      The Court DENIES defendant Swensen's motion to dismiss. Dkt. No. 66.

ii.      The Court GRANTS the CDCR Defendants' motion for summary judgment. Dkt. No. 67. The Court GRANTS summary judgment in favor of defendants Fonesca, Davis, Hagens, and Czajkowski on all claims, and GRANTS summary judgment in favor of defendant Thomas on the First Amendment free exercise and free speech claims. Defendants Fonesca, Davis, Hagens, and Czajkowski are DISMISSED from this action.

iii.      The remaining claims in this action are: (1) defendant Yanez discovered and read Plaintiff's draft federal civil rights complaint and in retaliation for this protected conduct, confiscated the complaint and reported it to Plaintiff's mental health team, in violation of the First Amendment; (2) defendants Swensen and Thomas directed custodial staff to confiscate Plaintiff's property, including his legal documents and the drafted federal complaint, in retaliation for Plaintiff's protected conduct, in violation of Plaintiff's First Amendment right to access the courts

and right to engage in protected conduct without suffering retaliation; (3) defendants Swensen and Thomas confiscated Plaintiff's religious books and items, in violation of his First Amendment right to free exercise of religion; and (4) defendants Swensen and Thomas confiscated Plaintiff's books and magazines, in violation of his First Amendment right to free exercise of speech.

iv.      The Court sets the following briefing schedule.  Within sixty (60) days of the date of this order, the parties shall file a dispositive motion.  Plaintiff's opposition to the dispositive motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed.  Defendants shall file a reply brief in support of their dispositive motion no later than 14 days after the date the opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion.

This order terminates Dkt. Nos. 66, 67.

**IT IS SO ORDERED.**

Dated: 3/7/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge